IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**KATHERINE HAN-NOGGLE**, as daughter
and Next of Kin to **MARY Y.C. HAN**, Deceased,
**ELIZABETH WALLBRO**, as Personal
Representative of the Estate of **MARY Y.C. HAN**,

      Plaintiffs,

v.                                                      No.:   2013-CV-00894 CG/GBW
                                                               **JURY DEMANDED**

**THE CITY OF ALBUQUERQUE; DARREN WHITE**,
in his individual and official capacity as Public Safety
Director for the City of Albuquerque; **ROBERT PERRY**,
in his individual capacity and official capacity as the City
Attorney; **CHIEF RAYMOND D. SCHULTZ**, in his
individual and official capacity as the Chief of Police of the
Albuquerque Police Department for municipal and supervisory
claims; **DEPUTY CHIEF PAUL FEIST, DEPUTY CHIEF
ELIZABETH PAIZ, DEPUTY CHIEF ALLEN BANKS,
COMMANDER RAE MASON**, in their individual and official
capacities as supervisors and trainers within the Albuquerque
Police Department; **MARC ADAMS**, in his individual and
Official capacity as Manager, investigator, and trainer of the
Albuquerque Police Department Crime Lab, **FIELD INVESTIGATOR
MICHAEL MUNIZ**, in his individual and official capacity,
**OFFICER TRICIA K. HOFFMAN**, in her individual and official
capacity, and **TODD J. WILHAM**, Albuquerque Police Department
Public Information Officer in his individual and official capacity; and
**JOHN DOES 1-2**;

      Defendants.

**DEFENDANTS' MOTION TO DISMISS I: MOTION TO DISMISS CIVIL RIGHTS CLAIMS AGAINST
INDIVIDUAL DEFENDANTS IN VERIFIED SECOND AMENDED COMPLAINT (COUNTS IV – VIII)
ON THE BASIS OF QUALIFIED IMMUNITY**

Defendants City of Albuquerque, Darren White, Robert Perry, Chief Raymond D. Schultz, Deputy Chief

Paul Feist, Deputy Chief Elizabeth Paiz, Deputy Chief Allen Banks, Commander Rae Mason, Marc Adams,

Michael Muniz, Officer Tricia K. Hoffman, and Todd J. Wilham, by and through their counsel, French &

Associates, P.C. (Stephen G. French and Erika E. Anderson), move to dismiss all of the civil rights claims[1] asserted against these individual Defendants in Plaintiffs' Verified Second Amended Complaint ("Second Complaint") on the basis of qualified immunity.

## I.      INTRODUCTION

The Second Complaint asserts eight (8) separate causes of action under the New Mexico Tort Claims Act ("NMTCA"), NMSA 1978, §§ 41-4-1 to -30,[2] and the Civil Rights Act of 1871, as codified and amended at 42 U.S.C. § 1983, § 1985, and § 1986 ("Section 1983," Section 1985" and "Section 1986," respectively).  On January 30, 2014, Plaintiffs moved to amend their complaint a third time.  [Doc. No. 32].  The proposed amendment drops one of the state tort claims (Count I) and one of the Section 1985 claims (Count VII) that are alleged in the Second Complaint.  *Cf.* [Doc. No. 7-12] *with* [Doc. No. 32].  All of the other claims alleged in the Second Complaint remain intact in the Verified Third Amended Complaint ("Third Complaint") although Plaintiffs have changed the order in which they plead the remaining claims.  Defendants have filed a response opposing Plaintiffs' motion to amend the complaint a third time, arguing that the proposed amendment does nothing to cure the deficiencies of the claims asserted in the Second Complaint.  [Doc. No. 35].

Because the individually named Defendants are all employed as public officers by the City of Albuquerque (the "City"), they are entitled to seek dismissal on the basis of qualified immunity for any claims that arise from discretionary acts or decisions undertaken within the scope of their employment.  *See Harlow v.*

---

[1] In accord with Local Rules 7.1(a), on March 10, 2014, undersigned counsel contacted Plaintiffs' counsel by electronic message ("E-mail") in a good faith effort to seek Plaintiffs' concurrence on dismissal of the civil rights claims against the aforementioned Defendants, owing to qualified immunity.  Plaintiffs' counsel failed to respond, as requested, by 2 p.m. on March 11, 2014, nor by close of business on the 11th.  Accordingly, Defendants must assume that Plaintiffs oppose this Motion.

[2] Three of the claims in the Second Complaint seek relief under the NMTCA.  [Doc. 7-12 at 10-15, Counts I-III].  Defendants address those claims in a separate motion to dismiss as the New Mexico courts have not held that qualified immunity applies to actions under the NMTCA.  See *Romero v. Sanchez,* 1995-NMSC-028, ¶ 25, 119 N.M. 690, 895 P.2d 212, in which the New Mexico Supreme Court states that it is an "open question" as to whether the doctrine of qualified immunity protects an official from an action brought under the NMTCA.  The Court notes that the question arises because the NMTCA was passed before the U.S. Supreme Court articulated the doctrine of qualified immunity in *Harlow* and before the doctrine developed as a defense to Section 1983 actions and Bivens actions in the federal courts.  The New Mexico Supreme Court declined to review the question in *Romero* because it was not raised on appeal and the parties both assumed that it did apply to NMTCA claims, but the Court stated that is found this assumption questionable.  *Id.*

*Fitzgerald*, 457 U.S. 800, 807 (1982) (explaining that qualified immunity recognizes the "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority.").  The acts and omissions at issue in Counts IV-VIII all involve the exercise of discretionary authority such as decisions on how to classify a death, which persons need to be interviewed as part of an initial investigation into a death, whether to call a criminalistics team to the scene, and dispatching particular officers to assist with an investigation.

The doctrine of qualified immunity shields government officials from liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow*, 457 U.S. at 818).  It was crafted by the courts to protect federal and state officials from " 'the unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit.' "  *Roybal v. City of Albuquerque*, No. Civ. 08-0181, 2009 WL 1329834, at *10 (D.N.M. Apr. 28, 2009) (quoting *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)).  Consequently, it is best to resolve issues of qualified immunity at the "earliest possible stage in litigation."  *Pearson*, 555 U.S. at 231 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)).  And, therefore, "the issue of whether a defendant is entitled to qualified immunity is properly considered in a motion to dismiss pursuant to Rule 12(b)(6).  *Baumeister v. New Mexico Comm'n for the Blind*, 425 F. Supp. 2d 1250, 1268 (D.N.M. 2006); *see also Behrens v. Pelletier*, 516 U.S. 299, 306 (1996) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.") (internal quotation marks and citation omitted).

As Defendants explain more fully below, Counts IV – VIII of the Second Complaint should be dismissed because the facts alleged therein fail to show that the Defendants' conduct violated a federal constitutional or statutory right.   This is the first prong of a two-part qualified immunity test.  *See Hope v. Pelzer*, 536 U.S. 730 (2002) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The two-prong test is framed in conjunctive terms.  In

other words, if the pleadings fail to satisfy either prong of the test, the defendant(s) is entitled to have the claim dismissed. *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995) ("If the plaintiff fails to carry either part of his two-part burden, the defendant is entitled to qualified immunity.").

Additionally, the factual allegations supporting the civil rights claims against the individual Defendants are so sketchy and broadly framed that they fail to provide notice of the specific acts for which the different Defendants may be held liable. *See Hunt v. Central Consol. School Dist.*, 951 F. Supp. 2d 1136, 1218 -19 (D.N.M., 2013) (noting that where a plaintiff is suing multiple defendants who may be entitled to qualified immunity, the pleadings must be sufficiently specific to let each defendant know the "isolate[d]. . . allegedly unconstitutional act" for which he or she is being sued) (quoting *Robbins v. Okla.,* 519 F.3d 1242, 1250 (2008)).

## II.    SUMMARY OF THE SECOND COMPLAINT

Plaintiffs allege that Defendant Muniz, an officer with the Albuquerque Police Department ("APD") who was assigned as a field investigator to APD's Scientific Evidence Division ("SED"), was tasked with investigating the unattended death of Ms. Han, an Albuquerque attorney, at her home on November 18, 2010. [Doc. No. 7-11 at 9, ¶ 43; at 16, ¶¶ 107-08; at 18, ¶ 125].  Plaintiffs allege that Defendant Muniz failed to conduct a thorough investigation of Ms. Han's unattended death or to preserve the integrity of the investigation scene. [*Id.* at 18, ¶ 127].

More specifically, Defendant Muniz allegedly permitted other APD officers and unknown individuals to be present at the Decedent's home during the investigation and allowed them to move items at the scene and to walk through Ms. Han's home and garage, possibly compromising evidence. [*Id.* at 18, ¶¶ 126-128; at 24, ¶¶ 180-81].  Defendant Muniz also allegedly failed to: photograph, measure and diagram the scene; collect fingerprint evidence or to test physical evidence found near Ms. Han's body for the presence of DNA; analyze the contents of certain liquid found near Ms. Han's body; document carbon monoxide levels in Ms. Han's home; ascertain whether her vehicle was the source for the high levels of carbon monoxide that the OMI detected in

her blood; investigate whether Ms. Han had any health concerns at the time of her death; and investigate what might have happened to certain jewelry that Ms. Han was accustomed to wear.  [Doc. No. 7-11 at 19, ¶¶ 128-129] and [Doc. No. 7-12 at 3-4, ¶ 214; at 12, ¶ 250, at 13, ¶ 251].  Plaintiffs allege further that Defendant Muniz, who was acting on instructions from his supervisor, Defendant Banks, also directed a junior officer to hand over a laptop computer found in Ms. Han's vehicle to her then-business partner, Albuquerque attorney and former New Mexico Supreme Court Justice Paul Kennedy.  [Doc. No. 7-11 at 18, ¶¶ 135-36].  Plaintiffs maintain that Defendant Muniz and/or his supervisors should have called the SED criminalistics unit to assist with the investigation or request the assistance of another law enforcement agency than APD.  [*Id.* at 21, ¶¶ 152, 155;] and [Doc. No. 7-12 at 13, ¶ 250(p)].

Additionally, Plaintiffs allege that high-ranking superior officers at APD and City officials such as Defendant Perry, the City Attorney, interfered with the course of the investigation into Ms. Han's death, preventing junior officers such as Defendant Muniz and others who are not named as defendants from following APD standard operating procedures ("SOPs") for investigating unattended deaths.  [Doc. No. 7-11 at 18, ¶ 125; at 20, ¶ 146; at 21, ¶ 151].  Plaintiffs allege further that Defendant Muniz's superiors such as Defendant Feist, who served as the Director of the SED, improperly cut short the investigation of Ms. Han's unattended death by classifying her death as a suicide shortly after the investigation began.  [Doc. No. 7-11 at 20, ¶ 146; at 21, ¶ 151] and [Doc. No. 7-12 at 19, ¶ 300].

Finally, Plaintiffs allege that the Officers attempted to cover up the inadequacy of the investigation into Ms. Han's death, destroyed evidence such as cellular telephones that belonged to officers who were present at Ms. Han's home on November 18, 2010, misled the OMI and/or failed to assist it with the forensic investigation into Ms. Han's death, and either stole a pair of diamond rings that Ms. Han was accustomed to wear or failed to investigate the possibility that the disappearance of this jewelry could be associated with Ms. Han's death (*i.e.,*

the jewelry was taken during a felony robbery).  [Doc. No. 7-12 at 15, ¶ 261; at 16, ¶¶ 274-75; at 17, ¶¶ 277-79; at 18, ¶ 288; at 20, ¶ 306].

Plaintiffs contend that these various acts and omissions give rise to eight separate causes of action, including: two NMTCA claims for negligent supervision or investigation leading to a deprivation of property rights (Counts I and III); a NMTCA claim for negligent supervision/investigation violating Ms. Han and or Plaintiffs' constitutional right to due process and her Fourth Amendment rights to be free of unreasonable searches and seizures (Count II); a Section 1983 claim for depriving Ms. Han and/or the Plaintiffs access to the courts (Count IV); three claims for violations of subparts 1, 2, and 3 of Section 1985 (Counts V-VII), and a claim against Defendant Schultz, APD's Chief of Police, based on his supervisory liability for violations of  Sections 1984, 1985(3) and 1986. [Doc. No. 7-12 at 11-21].

## III.    APPLICABLE LEGAL STANDARDS

### A.    Standard of Review for Rule 12(b)(6) Motions

Rule 12(b)(6) provides that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P.12(b)(6) (2014).  A Rule 12(b)(6) motion tests the legal sufficiency of the allegations contained within the four corners of the complaint.  *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991) (The court's objective in reviewing a motion to dismiss "is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."). Thus, the question that confronts the court in a Rule 12(b)(6) motion is not whether the plaintiff will ultimately prevail but whether the allegations entitle the plaintiff to offer evidence to support his claim.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

In reviewing a Rule 12(b)(6) motion, the court is to assume, for purposes of the Rule, that all well-pleaded factual allegations contained in the complaint are true.  It is also to view those allegations in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor.  *Mobley v. McCormick,*

40 F.3d 337, 340 (10th Cir. 1994); *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) ("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.") (quoting *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006)).

"Well-pleaded" is an important qualifier, however.  A court is under no mandate to accept a plaintiff's conclusory allegations.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.").  Nor is it under a mandate to "accept as true a legal conclusion couched as a factual allegation."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (internal quotations omitted).  Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.  And, while a complaint does not have to set forth detailed factual allegations, it must contain sufficient factual allegations "to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Twombly*, 550 U.S. at 555 (citation omitted).

More specifically, the complaint must contain sufficient factual allegations to state a claim for relief that is "plausible" on its face.  *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570) ("The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief."). "Plausibly" does not mean "likely to be true" in this context as a judge is not to dismiss a complaint simply because he doubts that the plaintiff will be able to muster actual proof of his claims. *Robbins*, 519 F.3d at 1247. Nor does it mean that the allegations cannot be general.  *Id.*  However, the allegations must not be so general that they would encompass a "wide swath of conduct" or so "sketchy" that they would fail to give the individual defendant notice of the specific conduct for which he is liable.  *Id.* at 1247-48, *see also Iqbal,* 556 U.S. at 678 ("A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").  If the complaint does not allow the court to

"infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' -'that the pleader is entitled to relief.' " *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## B.     Standard of Review for Motions to Dismiss on Qualified Immunity Grounds

When a defendant asserts qualified immunity, the plaintiff must demonstrate on the facts alleged: (i) that the defendant's actions violated his or her constitutional or statutory rights; and (ii) that the right was clearly established at the time of the alleged misconduct.  *See Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009).  Thus, the plaintiff must meet a two-pronged or two-part test.  Because the test is framed in conjunctive terms, the defendant will be entitled to qualified immunity if the plaintiff fails either prong of this test.  *See Verdecia v. Adams*, 327 F.3d 1171, 1174 (10th Cir. 2003) ("If the plaintiff does not satisfy either portion of the two-pronged test, the Court must grant the defendant qualified immunity.").

The U.S. Supreme Court has stated that courts may approach the qualified immunity analysis from either prong.  *Pearson*, 555 U.S. at 236 (holding that lower courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand.").  In other words, there is no requirement that a court begin the analysis by determining whether the facts allege a constitutional violation before it considers whether the right was clearly established at the time of the alleged misconduct.

Nevertheless, the Court has recognized a number of circumstances where courts might do best to begin the analysis by asking whether the right was clearly established at the time of the alleged misconduct such as,

> [W]hen (1) the first, constitutional violation question "is so factbound that the decision provides little guidance for future cases"; (2) "it appears that the question will soon be decided by a higher court"; (3) deciding the constitutional question requires "an uncertain interpretation of state law"; (4) "qualified immunity is asserted at the pleading stage" and "the precise factual basis for the ... claim ... may be hard to identify"; (5) tackling the first element "may create a risk of bad decisionmaking" due to inadequate briefing; (6) discussing both elements risks "bad decisionmaking" because the court is firmly convinced the law is not clearly established and is thus inclined to give little thought to the existence of the constitutional right; or (7) the doctrine

8

of "constitutional avoidance" suggests the wisdom of passing on the first constitutional question because "it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right."

*Kerns v. Bader,* 663 F.3d 1173, 1180–81 (10th Cir. 2011) (quoting *Pearson,* 555 U.S. at 236–42).

The qualified immunity defense does not impose a heightened pleading requirement or greater evidentiary burden on the plaintiff. *Baumeister,* 425 F. Supp. 2d at 1268.  However, in responding to a motion to dismiss on qualified immunity grounds, the plaintiff must "cite legal authority showing that the factual allegations in [the] pleading amount to a constitutional violation and that the specific constitutional right at issue is clearly established." *Id. at* 1268 (citation omitted).  Although courts generally apply the same standards in evaluating motions to dismiss for reasons of  qualified immunity as they do in reviewing motions to dismiss under Rule 12(b)(6), "complaints in [Section] 1983 cases against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants." *Robbins,* 519 F.3d at 1249 (quoting *Shero v. City of Grove,* 510 F.3d 1196, 1200 (10th Cir. 2007)) (internal quotations omitted)).

Accordingly, to satisfy the first prong part of the qualified immunity test, the complaint must do more than simply allege that the defendant has violated a constitutional or statutory right.  It must identify which clearly established constitutional right is at issue and point to specific acts by the defendant that violated the right.  *Albright*, 51 F.3d at 1535.

To satisfy the second prong of the test, the complaint must show " 'the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " *Holland ex rel. Overdorff v. Harrington*, 268 F.3d at 1186 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The Tenth Circuit has held that a right is clearly established if there is "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts" holds that such a right exists. *Medina v. City & County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992).  However, officials may be on notice

that their conduct is unconstitutional if the "conduct amounts to obvious cruelty," notwithstanding the fact that there is no appellate decision exactly on point. *Baumeister,* 425 F. Supp. 2d at 1268 (internal quotation marks and citations omitted).  "The 'salient question' is whether the state of the law at the time of the incident gave the defendants 'fair warning' that their conduct was unconstitutional." *Id.* (quoting *Hope v. Pelzer,* 536 U.S. 730, 741 (2002)).

## IV.    ARGUMENT

### A.    Plaintiffs' Official Capacity Claims against the Individual Officers are Duplicative of the Claims against the City and Must Be Dismissed.

Plaintiffs' Second Complaint asserts claims against eight public officers of the City and the municipality itself.  As a threshold matter, the official capacity claims against the officers are duplicative of the claims against the City.  See *Kentucky v. Graham*, 473 U.S. 159, 165 (1985), in which the United States ("U.S.") Supreme Court stated that a suit against a government official in his official capacity is really "only another way of pleading an action against an entity of which an officer is an agent" (quoting *Monell v. Dep't of Social Svs. of City of N.Y.*, 436 U.S. 658, 690, n. 55, (1978).  "As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Graham*, 473 U.S. at 166.

In view of this fact, Plaintiffs' official capacity claims against Defendants White, Perry, Schultz, Feist, Paiz, Banks, Mason, Adams, Muniz, Hofman and Wilham (the "Officers") are duplicative of Plaintiffs' claims against the City and should be dismissed.  *See Sims v. Unified Government of Wyandotte County/Kansas City, Kan.*, 120 F. Supp. 2d 938, 945 (D. Kan. 2000) ("When a plaintiff names both a municipality and a municipal officer in his official capacity as defendants in an action, the suit against the officer is redundant, confusing, and unnecessary and should be dismissed.") (citing *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir.1991) (upholding dismissal of individual defendants sued in their official capacity in § 1983 case)).

**B.      Plaintiffs Cannot Assert Constitutional Claims on Behalf of Decedent Mary Han That Are Unrelated to Her Death, As They Attempt to Do in Count IV.**

Count IV alleges that Defendants willfully and maliciously destroyed evidence at Mary Han's ("Ms. Han" or the "Decedent") home and her vehicle, which was the scene of her death, "effectively concealing the perpetration of a wrong in a manner that denied Ms. Han and/or her heirs the ability to seek redress by the court. [Doc. No. 7-12 at 16, ¶ 274].  In other words, Plaintiffs allege that Defendants engaged in intentional spoliation of evidence. Plaintiffs allege that "to the extent any evidence was gathered, APD lower ranking personnel were so misled that further obfuscation was the only result, effectively and permanently ending the prospect of anyone, including Plaintiffs from ever being able to find a cause and manner of Ms. Han's death." [*Id*. at 16, ¶ 275].

Count IV alleges further that Defendants' engaged in a conspiracy to deny and deprive Ms. Han and/or Plaintiffs of rights of due process guaranteed to Ms. Han under the Constitution and laws of the United States. [*Id*. at 16, ¶ 272; at 17, ¶ 279].  Count IV also alleges that Defendants White, Schultz, Banks, Feist, Mason and Adams insisted on staying in Ms. Han's home while Defendant Muniz was conducting an investigation of Ms. Han's death, and allowed at least twenty-six unknown individuals to enter the home, invading Ms. Han's privacy.  *See* [*id*. at 16-17, ¶ 276]; *see also* [*id*. at 15, ¶ 268 (reinstating allegations set forth earlier)] and [Doc. No. 7-11 at 16, ¶¶ 106-107] (describing Defendant Muniz's duties as field investigator for APD's Scientific Evidence Division ("SED"); [Doc. No. 7-12 at 18, ¶ 127] (noting that "Defendant Muniz failed to preserve the integrity of the scene and should have forbidden unauthorized and unnecessary personnel from entering the residence.").

Significantly, Plaintiffs do not allege that the Officers violated Ms. Han's due process rights in a manner that led to her death, notwithstanding the allegedly willful and malicious nature of their conduct.  This is important because binding precedent in the Tenth Circuit holds that constitutional tort claims predicated on intentional conduct do not survive the injured party's unrelated death.  *See Oliveros v. Mitchell*, 449 F.3d 1091,

1094-95 (10th Cir. 2006) (finding that New Mexico courts would hold intentional tort claims do not survive the injured party's unrelated death and that claims alleging constitutional torts that involve intentional misconduct do not survive the injured party's unrelated death).

Thus, to the extent that Count IV seeks redress for conspiracy to deny due process rights guaranteed to *Ms. Han* under the Constitution and laws of the United States, or for violations of *her* right to privacy, Count IV fails to meet the first prong of the qualified immunity test.  *See supra*, p. 9 (To satisfy the first prong of the qualified immunity test, the pleadings must identify an established constitutional right and point to specific acts by the defendant that violated the right.) (citing *Albrecht*, 51 F.3d at 1535).  Pursuant to Tenth Circuit precedent in *Oliveros*, Ms. Han's constitutional rights to due process and privacy cannot survive her death absent allegations that her demise was related in some way to violations of these rights.  *See also Martin v. Unknown U.S. Marshals*, ___F. Supp. 2d. ___, 2013 WL 4431789, at *29 (D.N.J., Aug. 15, 2013) (granting summary judgment on Section 1983 claims against various state actors because there was no evidence that the defendants made contact with the decedent before he died and a person's constitutional rights cannot be violated after death.) (citing *Silkwood v. Kerr–McGee Corp.*, 637 F.2d 743, 749 (10th Cir.1980)).

Additionally, it is important to note that only Plaintiff Elizabeth Wallbro, who is acting as Personal Representative for Ms. Han's Estate, would have standing to assert a claim for violation of Ms. Han's constitutional rights.  *See Martin,* 2013 WL 4431789, at *29  (noting that only the Personal Representative for the decedent would have standing to seek redress for violation of the decedents constitutional rights) (citing *U.S. v. Raines*, 362 U.S. 17, 22 (1960)).  Accordingly, Plaintiff Katherine Han-Noggle has no standing to assert a claim on behalf of Ms. Han and, to the extent that she is seeking redress for a violation of Ms. Han's constitutional rights, standing issues preclude the Court from even reaching the merits of such a claim.  *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("The Art. III judicial power exists only to redress or otherwise to

protect against injury to the complaining party, even though the court's judgment may benefit others collaterally.").

**C.     To the Extent that Count IV Asserts a Claim for Denial of Access to the Courts on Behalf of Plaintiffs Other Than the Estate of Ms. Han, Count IV Fails to Meet the First Element for Such a Claim under *Christopher v. Harbury*, 536 U.S. 403 (2002).**

As noted above, Count IV alleges that the Defendants engaged in a conspiracy to deprive Plaintiffs of their right to bring a wrongful death action in state court by failing to conduct a thorough investigation of Ms. Han's death. [Doc. No. 7-12 at 16, ¶ 275]; *see also supra*, pp. 4-6 (summarizing allegations of how Defendants failed to conduct a thorough investigation and interfered with efforts to comply with APD SOPs on investigating unattended deaths).

The right of access to the courts is founded in the Due Process Clause and it assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights.  *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974).  To state a claim for denial of access to courts, a party must identify all of the following in his/her complaint: (1) a non-frivolous, underlying claim; (2) the official acts frustrating the litigation; and (3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit.  *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).  In order to satisfy the first requirement, a plaintiff must plead his/her underlying claim with the same degree of specificity required if he/she were to pursue the underlying claim independently.  *Id.* at 417.  In other words, the plaintiff must include sufficient facts to show that the underlying claim is not frivolous and that the arguable nature of the underlying claim is based on something more than hope.  *Id.*

This is where Plaintiffs' denial of access claim fails.  They have not pled sufficient facts to allow the Court to infer that they had a realistic claim for the wrongful death of Ms. Han.  Notably, they are unable to say that the evidence shows her death was not self-inflicted.  Nor have they identified any parties who are suspected to have caused her death (as in a felony homicide associated with a robbery) or who could be liable

for her death on the basis of strict liability (*e.g.,* products liability).  There are no allegations that Ms. Han was the victim of a crime.  Plaintiffs simply suggest that her death *could* have occurred in connection with a robbery because two items of her jewelry were not found at the scene of her death, but they do not allege any other facts to support this theory of homicide.  [Doc. No. 7-12 at 13, ¶ 251].

Thus, at best, the only facts that Plaintiffs assert to support the theory that they could have filed a wrongful death claim are allegations that Ms. Han's unattended death was not properly investigated. Accordingly, Plaintiffs have not established the first element of their denial of access claim, which would require in this case that they allege specific facts to show that they had something more than just a hope and a prayer of being able to file a wrongful death claim.  *See Harbury*, 536 U.S. at 517 (plaintiffs must show that "arguable nature of the[ir] underlying [wrongful death] claim is more than hope.").

Additionally, while the U.S. Supreme Court identified the elements of a denial of access claim in *Harbury*, the Tenth Circuit has expressed misgivings about the legal viability of such claims when they are based on allegations of police cover-ups or faulty investigations.  See *Jennings v. City of Stillwater*, 383 F.3d 1199, 1207-09 (10th Cir. 2004), in which the Court discusses its prior decision on this point in *Wilson v. Meeks*, [3] 52 F.3d 1547 (10th Cir. 1995).

The Tenth Circuit has stated that its decision in *Wilson* strongly suggests that allegations of a police cover-up do not give rise to a constitutional claim for denial of access to courts within this Circuit.  *Id.* at 1208. Consequently, it appears that Plaintiffs' access to court claim in Count IV also fails to meet the second prong of

---

[3] The plaintiff in *Wilson* claimed that members of a local police force had used excessive force in shooting him and then failed to render medical care in the aftermath of his shooting.  He alleged that police failed to properly investigate the incident, lost evidence, altered evidence, and set up a code of silence amongst the officer corps in an attempt to cover-up the prior constitutional abuses. *Wilson*, 52 F.3d at 1556–57.  The plaintiff brought a constitutional claim based on the cover-up, characterizing his claims as a deprivation of the right of access to courts.  *Id.*  In its opinion, the Tenth Circuit advised that it had not endorsed a cause of action for denial of access based on a police cover-up and that even the Fifth Circuit, which first articulated an access to courts claim, had since limited these claims to cases in which officials interfered with the filing of the complaint.  *Id.* at 1557 (citing *Foster v. City of Lake Jackson*, 28 F.3d 425, 430 (5th Cir. 1994)).  When the Tenth Circuit next reviewed an access to court claim in *Jennings*, it left the matter unsettled as to whether *Wilson* foreclosed recognition of an access to court claim based on police cover-up or faulty investigation and dismissed the claim on a narrower ground.  *See Jennings*, 383 F.3d at 1209 ("[E]ven assuming the legal viability of a backwards looking denial of access claim, Plaintiff's case fails under the standards set forth in *Harbury*.").

the qualified immunity test, which is to show that this right was clearly established in Tenth Circuit case law in November 2010.  As of 2004, when the Tenth Circuit issued its decision in *Jennings*, the Tenth Circuit was expressing skepticism that allegations of faulty investigations or police cover-ups could even form the basis of an access to court claim.  And, the Tenth Circuit had pointed out earlier in 1994, that the Fifth Circuit, which was the first circuit to articulate such a claim for denial of access to the courts, was limiting such claims to cases in which officials had interfered with the filing of a complaint. *Wilson*, 52 F.3d at 1557 (citing *Foster v. City of Lake Jackson*, 28 F.3d 425, 430 (5th Cir. 1994)).  The Tenth Circuit has stated that "A clearly established right is generally defined as a right so thoroughly developed and consistently recognized under the law of the jurisdiction as to be 'indisputable' and 'unquestioned.' " *Lobozzo v. Colo. Dep't. of Corrections*, 429 F. App'x 707, 710 (10th Cir. 2011) (unpublished)(quoting *Zweibon v. Mitchell*, 720 F.2d 162, 172–73 (D.C.Cir. 1983)).  Plaintiffs have not, and cannot, show that their access to court claim in Count IV meets this definition.

Additionally, to the extent that Plaintiffs allege the Officers violated their constitutional rights because they failed to follow APD SOPs for investigating unattended deaths, entering private residences, *etc.*, the U.S. Supreme Court has rejected such attempts to equate violations of SOPs with constitutional violations.  *See Davis v. Scherer*, 468 U.S. 183, 194 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provisions.").  *See also Wilson v. Meeks*, 52 F.3d 1547, 1554 (1995) ("[V]iolation of a police department regulation is insufficient for liability under section 1983.").  Therefore, allegations that the Officers failed to follow APS SOPs on unattended death investigations or prevented other officers from doing so do not make out a claim for violation of Plaintiffs' constitutional rights.

D.    **Plaintiffs' Claims for Civil Conspiracy in Violation of Section 1985 Fail to State a Claim for Relief under Fed. R. Civ. P. 12(b)(6).**

Counts V, VI, and VII of the Second Complaint assert that Defendants conspired to violate Sections 1985 (1), (2) & (3).  Section 1985 provides a cause of action for various conspiracies that affect civil rights and

is divided into three subsections, which require different showings.  For example, Section 1985(1) applies to conspiracies that aim to thwart or hinder a federal officer in the performance of his duties.  *See Gallegos v. Jicarilla Apache Nation et. al.*, 97 F. App'x 806, 811 (10th Cir. 2003) (not published); 42 U.S.C. § 1985(1) (Preventing officer from performing duties).

In contrast, Section 1985(2) addresses conspiracies to obstruct justice in either federal or state courts. The first clause of Section 1985(2) deals with conspiracies to deter witnesses from appearing in proceedings in federal courts or before federal grand juries. 42 U.S.C. § 1985(2) ("If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully . . . "). The second clause of Section 1985(2) addresses conspiracies designed to deny individuals equal protection or to thwart the course of justice in any state or territory.  *See id.* ("[O]r if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws. . . .").

And, Section 1985(3)'s reach is limited to civil conspiracies that are motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus. *Kirby v. Dallas County Adult Probation Dept.*, 359 F. App'x 27, 35, 2009 WL 5064789, at *6 (10th Cir. 2009) (quoting *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993)) (internal quotation omitted); *Kelly v. City of Albuquerque*, 375 F. Supp. 2d 1183, 1205 (D.N.M. 2004) ("[I]n the absence of allegations of class based or racial discriminatory animus, the complaint fails to state a claim under Section 1985(3).") (*citing Bisbee v. Begay*, 39 F.3d 1096, 1102 (10th Cir. 1994) (quoting *Campbell v. Amax Coal Co.*, 610 F.2d 701, 702 (10th Cir. 1979) (per curiam)).

Plaintiffs' claims for civil conspiracy under Section 1985 suffer various deficiencies--whether they are brought pursuant to Section 1985(2), as in Count V; Section 1985(1), as in Count VI; or Section 1985(3), as in Count VII and Count VIII.  Defendants have already noted that any constitutional claims filed on behalf of Ms.

Han do not survive her death, absent allegations that the alleged constitutional deprivations led to her death. *See supra*, pp. 11-12 (citing *Oliveros v. Mitchell*, 449 F.3d 1091, 1094 -95 (10th Cir. 2006)).   Accordingly, Defendants do not reiterate those arguments here, but rather focus on alternative and additional reasons why Plaintiffs' Section 1985 claims fail to meet the first prong of the qualified immunity test.

> **1.      Count V Is Pled in Purely Conclusory Terms and Fails to Allege that Similarly Situated Individuals Were Treated Differently.**

Count V contains conclusory allegations and nothing more:

282.  Plaintiffs reinstate the allegations above as if fully set forth herein.
283.  Defendants conduct impeded, hindered, obstructed and defeated the due course of justice with the intent to deny plaintiffs equal protection, or to injure their attempts to enforce equal protections on behalf of their decedent.
284.  Defendants conduct was intentional.
285.  Plaintiffs were injured as a result of conduct interfering with the judicial process.

[Doc. No. 7-12 at 17-18, ¶¶ 282-85].  These types of allegations do not meet federal pleading standards.  *See Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989) (defining a conclusory allegation of conspiracy as one that fails to allege specific facts showing agreement and concerted action among defendants); *Sooner Prods. Co. v. McBride*, 708 F.2d 510, 512 (10th Cir. 1983) ("[M]ere conclusory allegations with no supporting factual averments are insufficient [to state a civil claim for conspiracy]; the pleadings must specifically present facts tending to show agreement and concerted action.").

Plaintiffs fail to even plead that two or more of the Defendants *conspired* to obstruct the course of justice in a specific proceeding in *state court*, which is the requisite predicate act under Section 1985(2).  *See Roper v. County of Chesterfield, Va*., 807 F.Supp. 1221, 1226-27 (E.D.Va. 1992) ("In order to state a valid claim under this clause [second clause of section 1985(2)], a litigant must demonstrate some interference with the course of justice in state courts.") (citing *Kush v. Rutledge*, 460 U.S. 719, 725 (1983)).

Plaintiffs' Section 1985(2) claim also fails to state a claim for relief because it fails to include any allegations that Ms. Han and or the Plaintiffs were treated differently from similarly situated individuals.  As the

U.S. Supreme Court explained in *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591 (2008) "equal protection jurisprudence has typically been concerned with governmental classifications that 'affect some groups of citizens differently than others.' " *Id.* at 601 (quoting *McGowan v. Maryland*, 366 U.S. 420, 425 (1961)). "[T]he basic concern of the Equal Protection Clause is with state legislation whose purpose or effect is to create discrete and objectively identifiable classes." *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 60, 93 (1973) (Stewart, J., concurring).  Thus, "[p]laintiffs in such cases generally allege that they have been arbitrarily classified as members of an "identifiable group." *Engquist*, 553 U.S. at 601.  In other words, plaintiffs most typically allege some form of class-based discrimination.

Nevertheless, under certain circumstances, a plaintiff may also state a legally viable equal protection claims without alleging that he or she is a member of a class that has been subject to discrimination.  Such circumstances are present when plaintiff has been "irrationally singled out" for different treatment from other individuals who are "similarly situated."  *See Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) ("Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.").   These types of equal protection claims are known as "class of one" claims.  *See Kansas Penn Gaming, LLC v. Collin*s, 656 F.3d 1210, 1215–16 (10th Cir. 2011) ("'The paradigmatic 'class of one' case, sensibly conceived, is one in which a public official, with no conceivable basis for his action other than spite or some other improper motive (improper because unrelated to his public duties), comes down hard on a hapless private citizen.' ") (internal quotation omitted).

Plaintiffs do not specifically state that they are bringing their Section 1985(2) claim for conspiracy to deny equal protection claim under a "class of one theory."  However, in Count VII, which alleges a conspiracy under Section 1985(3), Plaintiffs assert that "Defendants' conspiracy was motivated by class-based, invidiously discriminatory animus" and identify the animus as being directed against Ms. Han's race and gender.  [Doc. No.

7-12 at 19, ¶ 297].   Accordingly, Defendants assume that Count V is not intended to be duplicative of Count VII,[4] which suggests that Count V is, indeed, based on a "class of one" theory of discrimination.

If this is the case, then Plaintiffs must allege sufficient facts to support the inference that similarly situated persons were treated differently by APD and point to a similarly situated individual who received different treatment.   *See, e.g., Jennings v. City of Stillwater*, in which the Tenth Circuit affirmed summary judgment in favor of the defendants on Jennings' claim that the defendant police officer's treatment of her case violated the Equal Protection Clause.   *Jennings v. City of Clearwater,* 383 F.3d 1199, 1209 (10th Cir. 2004). The Tenth Circuit's decision in that case rested on two grounds: (1) the plaintiff "failed to identify any specific actions of the defendants that were both wholly arbitrary and lacking in legitimate justification and also had a concrete effect on her rights, *id.* at 1212; and (2) the plaintiff "failed to make an adequate showing that similarly situated persons were treated differently."   *Id.* at 1213.   Plaintiffs do not make these type of allegations in the Second Complaint, and, as a result, Count V fails to state a claim for relief based on Section 1985(2).   *See Bruner v. Baker*, 506 F.3d 1021, 1029 (10th Cir. 2007) (reiterating that this "element" [that similarly situated individuals were treated differently] is especially important in class of one cases" and affirming dismissal of plaintiff's equal protection claim because he "failed to point to any similarly situated individuals, let alone similarly situated individuals treated differently.").

Because Plaintiffs have failed to include any allegations about similarly situated individuals in the Second Complaint, Count V fails to meet the first prong of the qualified immunity test, which is to state a claim for violation of a constitutional right.   *See supra at 9* (citing *Albrecht,* 51 F.3d at 1535) (To satisfy the first prong of the qualified immunity test, the pleadings must identify an established constitutional right and point to specific acts by the defendant that violated the right.). Once again, as Defendants noted previously with respect to Count IV, any claim that Defendants violated Ms. Han's constitutional rights is no longer actionable following

---

[4] Count VI alleges that "A Section 1985(1) conspiracy does not require a discriminatory animus to support liability regarding race or gender, and none is alleged in this court."   Count V does not contain any mention of the words "animus," "discrimination", "class," "race," "gender" or "similarly situated."

her death, unless the alleged violations played a role in her demise.  *See supra* at 11-12 (citing *Oliveros v. Mitchell*, 449 F.3d 1091, 1094-95 (10th Cir. 2006)).  And, there have been no allegations of this sort.

Finally, to the extent that Count V should be read to allege that Defendants conspired to deprive Plaintiffs of the right to file a wrongful death suit in state court, Count V is duplicative of Count IV and should be dismissed.  *See* [Doc. No. 7-12 at 16, ¶ 275] ("To the extent that any evidence was gathered, APD lower ranking personnel were so misdirected that further obfuscation was the only result effectively and permanently ending the prospect of anyone, including Plaintiffs from ever being able to find a cause and manner of Ms. Han's death).

> **2.     Count VI Fails to State a Claim for Relief Based on Conspiracy to Prevent a Federal Official from Performing His Duties under Section 1985(1).**

Count VI is fatally flawed as a matter of law because it alleges that Defendants conspired to interfere with the duties of an official(s) at "OMI." [Doc. No. 7-12 at 18, ¶ 288].  Plaintiffs identify the federal officials as officials at OMI who were conducting the investigation into Ms. Han's death.  *Cf.* [*id.* at ¶ 287] ("Defendants interfered with the duties of federal officials") *with* [*id.* at ¶ 288] ('Defendants conspired to tell [sic] misinform the OMI about the decedent and or deliberately misstated they would assist in the OMI investigation when it was not true and//or refused to provide a statement to OMI or any other agency inquiring into Ms. Han's death.").

OMI is the acronym for the New Mexico Office of the Medical Investigator.  *See* University of New Mexico New Mexico Office of the Medical Investigator, "About OMI, Governance," at http://omi.unm.edu/about/index.html ("The Office of the Medical Investigator (OMI) was created by the New Mexico State Legislature in 1972 and became operational in 1973.  Replacing the county coroner system with a statewide medical examiner system, the OMI was tasked with investigating all reportable deaths occurring in New Mexico, to subsequently determine the cause and manner of death in such cases, and to provide formal death certification.").  The Court may take judicial notice of the fact that OMI is an agency of the *state* government of New Mexico.  Consequently, its employees are, by definition, state employees, not federal

employees.  As noted previously, conspiracy claims under Section 1985(1) apply only to conspiracies that are designed to hinder a federal official from performing his duties.  *See supra* at 15-16 (discussing the different showings required for claims under Section 1985(1), (2) and/or (3)).

### 3.   Count VII Fails to State a Facially Plausible Claim for Either Race-Based or Gender-Based Animus As a Motivating Factor in Defendants' Alleged Violations of Section 1985(3).

As Defendants noted previously, to state a claim for conspiracy to violate Section 1985(3) a plaintiff must allege that the conspirators were motivated by racial or other class-based discriminatory animus.  *See supra* at 16 (discussing elements of a claim for violation of section 1985(3)).  Count VII makes the following allegations regarding discriminatory animus on the part of the Officers:

> 297.   Defendants' conspiracy was motivated by class-based, invidiously discriminatory animus, was in violation of federal laws that guarantee meaningful access to the courts and violence against women statutes. In this case, the invidious discriminatory animus that was class-based included racially invidious and [sic] women.
> 298.   Defendants dismissed Ms. Han as a woman who stopped exercising and engaging in any regular physical activity to belie [sic] their claim that she was depressed and suicidal and/or she committed 'accidental suicide.'
> 299.   At the scene, Defendants engaged in deliberate actions meant to deflect any purposeful or meaningful investigative resources and [sic] reflects class-based invidiously discriminatory animus behind the conspirators' actions.

[Doc. No. 7-12 at 19, ¶¶ 297-299].  Although Count VII incorporates all of the earlier allegations, which include at least 212 "General Allegations" and forty-two additional allegations in Counts I-VI, none of the preceding allegations discuss race, gender or animus [Doc. No. 7-11 at ¶¶ 57-269, 270-293].

It is obvious that the allegations in paragraphs 297 and 299 are purely conclusory and thus, they are not entitled to be accepted as true for purposes of Rule 12(b)(6).  *See supra* at 7-8 (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) and *Iqbal*, 556 U.S. at 679).  While the allegations in paragraph 298 are not conclusory, they are not plausible on their face because they do not allow the Court to infer that the Officers failed to fully investigate Ms. Han's death out of some gender-based animus. To the contrary, they suggest that the Officers asserted that Ms. Han had stopped

exercising on a regular basis merely to bolster their claim that her death was suicidal and did not require a fuller investigation.   In short, Plaintiffs do not make any allegations or otherwise state any set of facts that might allow the Court to infer these Officers acted out of gender-based animus, to say nothing of racially-based animus, when they conspired to classify Ms. Han's death as a suicide.   Under these circumstances, Count VII is subject to dismissal under the first prong of the qualified immunity test.   And, to reiterate, if Count VII should be read as alleging that any of the Officers conspired to violate Section 1985(3) in deprivation of Ms. Han's civil rights, such a claim is not actionable upon her death absent allegations that the alleged violations contributed to her death.   *See supra* at 11-12 (citing *Oliveros v. Mitchell*, 449 F.3d 1091, 1094-95 (10th Cir. 2006)).

**4.      Count VIII Also Fails to Allege That Chief Schultz Was Motivated by Class-Based Discriminatory Animus to Violate Section 1985(3).**

Count VIII is pleaded as a supervisory liability claim against Defendant Schultz, APD's Chief of Police, for violations of Section 1985(3), 1984 and 1986.   This Count does not contain any allegations that Defendant Schultz or any of his alleged, but as of yet unidentified, co-conspirators acted out of a class-based or racially discriminatory animus towards Ms. Han.   As noted above, this is a required element of a conspiracy claim under Section 1985(3).   Thus, Count VIII fails to state a claim for relief based on a violation of Section 1985(3) just as Count VII does, and Defendant Schultz is entitled to qualified immunity under the first prong of the qualified immunity test.

**E.      The Supervisory Liability Claims in Count VIII, Which Are Predicated on Alleged Violations Sections 1984, 1985(3), and 1986 Also Fail As a Matter of Law.**

Count VIII of the Second Complaint asserts that Defendant Schultz should be liable for supervisory omissions that resulted in civil rights conspiracies under Sections 1984-1986.   Defendants have already discussed the defects of this Count with respect to allegations of conspiracy under Section 1985(3).   However, Count VIII also fails in its reliance on Sections 1984 and 1986.   First and foremost, it should be noted that Plaintiffs fail to allege any facts concerning violations of Section 1984 in the body of Count VIII.   The only

reference to Section 1984 appears in the caption to Count VIII.  Nevertheless, if Plaintiffs intend to amend the pleading further to allege that Chief Schultz acquiesced in violations of Section 1984, such an amendment would be futile.  Subsections 1 and 2 of this Section of the Civil Rights Act of 1871 have been declared unconstitutional and Sections 3 and 4 have been repealed.  *See* 42 U.S.C. § 1984 (Historical and Statutory Notes).

Plaintiffs' attempt to hold Defendant Schultz liable for negligent supervision under Section 1986 is equally unavailing.  A plaintiff may assert a claim against a supervisory official under Section 1986 where the official has refused to take positive action to avert or deter conduct that would give rise to a cause of action under Section 1985.  *Taylor v. Nichols*, 558 F.2d 561, 567-68 (10th Cir. 1977).  Obviously, as the Tenth Circuit has stated, "[i]n view then of this relationship, there cannot be a valid claim under Section 1986 unless there is also a claim under Section 1985."  *Id.*  As Defendants have shown in the preceding argument section of this Brief, Plaintiffs have failed to state a claim for relief under Section 1985.  Therefore, they cannot seek redress for Defendant Schultz's alleged supervisory omissions under Section 1986.

**F.    Allegations against Most of the Individual Defendants Are So Sketchy and Broad That They Fail to Provide Fair Notice As Required by Fed.R.Civ.P. 8.**

The Second Complaint includes 212 "General Allegations" and sixty-nine allegations[5] dealing with discrete causes of action.  [Doc. No. 7-11 at ¶¶ 57-269, 270-312.].  Despite the number of averments, the Second Complaint fails to make specific factual allegations against a number of the Officers to apprise them of what they may have done to violate either Ms. Han's and/or Plaintiffs' civil rights.  Thus, the Second Complaint fails to provide the Officer with adequate notice of the civil rights claims against them.

For example, Defendant Wilham's name appears five times across the 254 paragraphs that comprise the General Allegations or cause of action sections of the Second Complaint.  The only substantive references to Defendant Wilham that appear in the Second Complaint are the references in paragraphs 189-190.  These

---

[5] The Second Complaint contains errors in the numbering sequence for the paragraphs beginning in Count I.  See Doc. 7-12 at 13, which begins with paragraph 251, whereas the previous page of the Second Complaint ends on paragraph 277.

paragraphs allege, respectively, that: (1) Defendant Wilham informed OMI personnel that they were not to show Ms. Han's body to her sister as they were removing Ms. Han's body from her home; and (2) that Defendant Wilham did not have authority to even be in Ms. Han's home much less issue orders because he is just a civilian employee of APD.  [Doc. No. 7-11 at 25, ¶¶ 189-190].  It is not clear how Defendant Wilham's conduct harmed Plaintiffs because they specifically state that OMI refused to follow his order.  [*Id.* at 25, ¶ 189].

The remaining references to Defendant Wilham appear in paragraphs 113, 227, and 259.  Paragraph 113 simply states that Defendant White received three incoming telephone calls from Defendant Wilham's cellular telephone among other numbers, while Defendant White was conversing with Defendant Schultz. [Doc. No. 7-11 at 16, ¶ 113].   Paragraph 227 alleges that Defendant Wilham, like a number of other Defendants who were present at Ms. Han's home on November 18, 2010, was asked to file a supplemental report to the APD file on Ms. Han's death.  [Doc. No. 7-12 at 5, ¶ 227].  Paragraph 259 alleges that Defendant Wilham had an APD-issued cellular telephone.  [*Id.* at 14, ¶ 259].

The allegations alleged in these five paragraphs are so sketchy that they do not apprise Defendant Wilham of how he is alleged to have participated in the conspiracies to destroy or contaminate evidence and suppress an unattended death investigation or to deprive Ms. Han and the Plaintiffs of her/their civil rights.  The allegations certainly do not allow the Court to infer that Defendant Wilham could have been involved in any of these alleged acts, apart from the fact that he was present at the scene as a public information officer.

The allegations against Defendants Perry, Paiz, Banks, Mason, Adams, and Hoffman are similarly limited.  The only specific allegation against Defendant Hoffman is that she was quoted by a reporter for the Albuquerque Journal on November 19, 2010, in an article labeled "Talented Attorney Found Dead."  *Cf.* [Doc. No. 7-11 at 24, ¶ 179] (on how Defendant Hoffman was quoted by the press) *with* [Doc. No. 7-11 at 17, ¶ 119; at 22, ¶ 163] and [Doc. No. 7-12 at 5, ¶  227; at 15, ¶ 261] (alleging that an APD officer's log shows Defendant Hoffman arrived at Ms. Han's home on November 18, 2010 and entered it, along with other APD Officers; that

she was in telephone communication with Defendant Schultz while she was at Ms. Han's home; that she filed a Supplemental Report for the investigation file into Ms. Han's death, and that APD failed to preserve the cellular telephone that Defendant Hoffman used on November 18, 2010).   Plaintiffs do not elaborate on what Ms. Hoffman is alleged to have told the reporter.

The allegations specific to Defendant Perry are equally trifling.   The Second Complaint alleges that he was present at Ms. Han's home and communicated with Defendant Schultz and Ms. Han's business partner, Paul Kennedy, and APD legal counsel, Kathy Levy, while he was at Ms. Han's home; telephoned Ms. Han's cellular telephone in an attempt to locate it while he was at her home; visited Mr. Kennedy afterwards at his law office; filed a Supplemental Report on his presence at the investigation scene and was interviewed about it; had a personal relationship with Mr. Kennedy; was in possession of a City-issued cellular telephone while he was at Ms. Han's home; and knew or should have known that APD had an obvious conflict of interest in being at Ms. Han's home during the collection of evidence.   *See* [Doc. No. 7-11 at 16, ¶ 111; at 20, ¶¶ 139-40; at 22, ¶¶ 165-66; at 23, ¶ 168] and [Doc. No. 7-12 at 5, ¶¶ 227, 229; at 10, ¶¶  264-65; at 14, ¶  259; at 16, ¶ 276].   These allegations do not provide Defendant Perry with notice of how he personally participated in the alleged civil rights conspiracies.   Indeed, given that Defendant Perry was purportedly dispatched to Ms. Han's home to address issues surrounding legal documents, computers and other sensitive legal items present at the scene and to work with Ms. Han's legal partner, Paul Kennedy, to ensure confidentiality of any legal items present, [Doc. No. 7-11 at 24, ¶ 177], these allegations do not even hint at misconduct.

The allegations against Defendants Paiz, Banks, Mason, and Adams are no more specific than those against Defendants Wilhelm, Hoffman, and Perry.   The Second Complaint alleges that Defendants White, Paiz, Banks, Mason, and Adams all held supervisory positions at APD or its SED unit.   [Doc. No. 7-11 at 7-9, ¶¶ 25-45].   The chief complaint against them appears to be that they should not have been present at Ms. Han's home on November 18, 2010 because they were not directly responsible for investigating her death.   Moreover,

Plaintiffs complain that these Defendants interfered with the investigation just by being present and failed to properly train junior investigating officers in SOPs for investigating unattended deaths, preservation of evidence and entering private property. *See* [*id.* at 15, ¶ 101; at 17, ¶ 116; at 18, ¶ 126; at 24] and [Doc. No. 7-12 at 4, ¶ 216; at 5, ¶ 237; at 6, ¶ 235; at 12-13, ¶ 276].

The Tenth Circuit has stated that it is important in Section 1983 cases, which can involve multiple defendants, that the complaint make clear "exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state [local government entity]." *Robbins*, 519 F.3d at 1249-50. The allegations described above are so sketchy that they fail to give Defendants Perry, Paiz, Banks, Mason, Adams, Hoffman and Wilham adequate notice of the isolate[d] . . . allegedly unconstitutional act" for which these individuals are to be held personally accountable. *See id.* at 1250. Moreover, most of the allegations in Counts IV-VIII are pleaded in terms of the "Defendants" as a group or "APD." Because the allegations do not differentiate among the individual Officers, it is impossible for them to truly ascertain what unconstitutional acts they committed in furtherance of the various conspiracies alleged in these Counts. In view of these facts, the Second Complaint simply fails to provide the fair notice required of pleadings under Federal Rule of Civil Procedure 8. *See id.* (finding that a complaint failed to give fair notice under Rule 8 because it used the collective term "Defendants" throughout and/or listed the individual Defendants without stating which acts were attributable to specific individuals, making it " impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed.")

## V.    CONCLUSION

Counts IV-VIII all fail to hold up to scrutiny under the first prong of the qualified immunity test. Some of the Counts fail, as matter of pure law, to state a claim for violation of Plaintiffs' constitutional or federal statutory rights. This is the case, for example, with Count VI, which asserts that Defendants conspired to prevent a state

official from discharging his duties when the applicable statute applies only to conspiracies involving federal officials.  Any attempt to cure this defect through an amendment to the pleading would be futile.  Other Counts fail to allege sufficient facts to state a plausible claim for a constitutional violation or fail to address the requisite elements of the constitutional violation alleged therein.  This is the case, for example, with Count VII, which alleges that Defendants were motivated by racial and gender-based discriminatory animus, but fails to offer anything more than conclusory allegations of such animus, or Count VIII, which fails to even allege class-based animus as it should to state a claim for violation of section 1985(3).

And, other Counts fail both as a matter of law and for insufficient factual content.  This is the case, for example, with Count IV.  It fails, as a matter of law, to allege a claim for violation of Ms.Han's right to access the courts because she is deceased and the alleged efforts to block her access to the courts played no role in her demise.  Thus, the claim does not survive her death.  Nor do any of the other civil rights claims that are asserted on her behalf.  *See supra* at 11-12 (citing *Oliveros v. Mitchell*, 449 F.3d 1091, 1094-95 (10th Cir. 2006)).  To the extent that Count IV asserts that Plaintiff Han-Noggle was deprived of *her* right to access the courts, it fails to allege sufficient facts to show that she would have been able to even bring a wrongful death suit on behalf of Ms. Han.

Finally, the Second Complaint fails to give most of the Defendants fair notice of what they are alleged to have done as *individuals* to violate Plaintiffs' constitutional and/or federal statutory rights because the allegations are either pleaded in the collective or are too sketchy.

For all these reasons, the individual Defendants are entitled to have Counts IV-VIII dismissed on the basis of qualified immunity.

**Respectfully submitted:**

**FRENCH & ASSOCIATES, P.C.**
**ATTORNEYS AT LAW**

Electronically filed

By:  _/s/  Stephen G. French_____
        Stephen G. French
        Erika E. Anderson
        500 Marquette, NW - Ste. 500
        Albuquerque, NM  87102
        (505) 843-7075 / (505) 243-3482 facsimile
        sfrench@frenchlawpc.com
        eanderson@frenchlawpc.com
        *Attorneys for Defendants*

**I HEREBY CERTIFY** that on the 11th day of March, 2014, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Rosario D. Vega Lynn, Esq.
Vega Lynn Law Offices, LLC
1019 2nd Street, NW
Albuquerque, NM  87102
vegalynnlawfrim@aol.com
*Attorney for Plaintiffs*

_/s/  Stephen G. French_____