**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

KATHERINE HAN-NOGGLE, as daughter
and Next of Kin to MARY Y.C. HAN,
Deceased, and ELIZABETH WALLBRO,
as Personal Representative of the
Estate of MARY Y.C. HAN,

        Plaintiffs,

v.                                              CV 13-894 CG/GBW

CITY OF ALBUQUERQUE; DAREEN WHITE, in his
individual and official capacity as Public Safety Director
for the City of Albuquerque; ROBERT PERRY, in his
individual capacity and office capacity as the City
Attorney; CHIEF RAYMOND D. SCHULTZ, in his
individual and official capacity as the Chief of Police
of the Albuquerque Police Department for municipal and
supervisory claims; DEPUTY CHIEF PAUL FEIST,
DEPUTY CHIEF ELIZABETH PAIZ, DEPUTY CHIEF
ALLEN BANKS, in their individual and official capacities
as supervisors and trainers within the Albuquerque Police
Department; MARC ADAMS, in his individual and official
capacity as manager, investigator, and trainer of the
Albuquerque Police Department Crime Lab; FIELD
INVESTIGATOR MICHAEL MUNIZ, in his individual
and official capacity; OFFICER TRICIA K. HOFFMAN, in her
individual and official capacity; and TODD J. WILHAM,
Albuquerque Police Department Public Information Officer
in his individual and official capacity; and JOHN DOES 1-2,

        Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

      **THIS MATTER** is before the Court upon *Defendants' Amended Motion to*

*Dismiss I: Motion to Dismiss Civil Rights Claims Against Individual Defendants in*

*Verified Third Amended Complaint (Counts I to V) on the Basis of Qualified Immunity*

("Motion to Dismiss"), filed March 24, 2014, (Doc. 58); *Plaintiffs' Response to*

*Defendants' Amended Motion to Dismiss* ("Response"), filed April 10, 2014, (Doc. 64);

and *Defendants' Reply in Support of Amended Motion to Dismiss I Regarding Federal Civil Rights Claims in Counts (Counts I to V)* [sic] *of Third Verified Complaint* ("Reply"), filed April 24, 2014, (Doc. 68).  After reviewing the briefs, the Court grants Defendants' Motion to Dismiss.

## I.   Factual Allegations[1]

Plaintiffs' claims arise from the investigation into Mary Y.C. Han's death.  Ms. Han was the mother of Plaintiff Katherine Han-Noggle and the sister of Plaintiff Elizabeth Wallbro, who is also the personal representative of the Estate of Mary Y.C. Han.  (Doc. 53 at 2).   In their *Verified Third Amended Complaint for Violations of Civil Rights and Supplemental Claims Under State Law* ("Complaint"), (*Id.*), Plaintiffs allege that Defendants, acting under color of law, violated their constitutional rights.  Plaintiffs bring their claims pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985.  The Complaint also includes a state law claim, brought pursuant to the New Mexico Tort Claims Act, for negligent supervision and/or negligent investigation causing violation of property rights.

On November 18, 2010, Ms. Han's body was found in her car, a BMW 330i, by Paul Kennedy, Ms. Han's law partner.  (*Id.* at 10-11).  Mr. Kennedy called 911 and reported an "accidental suicide."  (*Id.* at 10).  Shortly thereafter, members of the Albuquerque Police Department ("APD") and the Albuquerque Fire Department ("AFD") responded to the scene.  (*Id.*).  All of the windows in the car were rolled down and Ms. Han's body was found in the driver's seat, with her feet crossed and resting on the dashboard.  (*Id.* at 13).  AFD personnel recognized that Ms. Han was "obviously

---

[1] At this stage of the proceedings, the Court takes all factual allegations in the Complaint as true.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

expired" and identified the area as a possible crime scene which was "turned over to APD for investigation and preservation of evidence." (*Id.* at 12).

Officer Lonz, one of the first responders from APD, noted that the home smelled of vehicle emissions. (*Id.* at 13). AFD was not asked to take a meter reading of the carbon monoxide levels. (*Id.*). Officer Hoisington, of the APD, commented that Ms. Han "did not have the cherry red skin coloring regularly seen in carbon monoxide deaths via motor vehicle." (*Id.* at 14). Records from the Office of the Medical Investigator ("OMI") show that Ms. Han died with 84.8% carboxyhemoglobin saturation levels in her system, which is an "improbable cause of death from ambient air contaminated with carbon monoxide via motor vehicle." (*Id.* at 23).

Defendant Muniz, a Field Investigator, was dispatched to the scene approximately twenty-five minutes after Mr. Kennedy called 911. (*Id.* at 14). Many of the Defendants were in telephone communication with each other shortly after Mr. Kennedy called 911 and arrived at the scene within an hour. (*Id.* at 14-15). Defendant Schultz, the Chief of Police, was also in contact with the mayor of Albuquerque. (*Id.* at 15). Officers Lonz and Welch, officers who were initially on the scene and the lowest ranking law enforcement officers, began a canvass of Ms. Han's neighborhood but were directed to stop. (*Id.* at 15-16).

A large number of personnel from APD entered Ms. Han's home though their presence interfered with Defendant Muniz's investigation of the scene. (*Id.* at 16). Plaintiff Wallbro was not permitted to enter the home, but did ask APD personnel about Ms. Han's diamond rings. (*Id.* at 16-17). Mr. Kennedy told Plaintiff Wallbro that "the cops took the rings," but the rings have never been found. (*Id.* at 25). In 2011, the APD

officer assigned to investigate the missing rings suggested that certain procedures were not followed at the time of Ms. Han's death. (*Id.* at 26-27).

Ms. Han's laptop and cell phone were given to Mr. Kennedy, who removed them from the scene on November 18, 2010. (*Id.* at 17-18). At the time of her death, Ms. Han was involved in litigation against Defendants Schultz and the City of Albuquerque. (*Id.* at 30-31). Mr. Kennedy did not respond to requests from an OMI Investigator regarding the laptop; Defendant Feist told the investigator that it was unlikely that Mr. Kennedy would provide the laptop to APD because Ms. Han was involved in civil suits against APD. (*Id.* at 22-23).

Though Mr. Kennedy and Ms. Han were partners in their law practice, Ms. Han had been seeking new office space in October 2010. (*Id.* at 18). Ms. Han's laptop was used to send an email to a local bank seeking a personal loan on November 17, 2010. (*Id.* at 17). Also on November 17, 2010, Ms. Han and Plaintiff Wallbro discussed plans for Thanksgiving. (*Id.* at 18). The conversation was discontinued when an unknown individual arrived at Ms. Han's home. (*Id.* at 18).

Notwithstanding Ms. Han's apparent plans for the future, Defendant Feist directed APD personnel to treat Ms. Han's death as a suicide and "forbade personnel" from calling the criminalistics unit. (*Id.*). Ms. Han's family and friends were not interviewed as part of the investigation, and the scene was not secured. (*Id.* at 19-20).

There are conflicting reports regarding the temperature of the engine of Ms. Han's car, with one report stating that it was warm and another stating that it was cold when the body was discovered. (*Id.* at 21). The car's battery was initially dead and though APD jump-started the car, no one recorded information about the car's condition

4

once it was started.  (*Id*.).  Defendant Muniz and Officer Welch offered conflicting reports on how or why the car would have turned off.  (*Id*. at 21-22).  The APD did not conduct vehicle emissions testing on Ms. Han's vehicle.  (*Id*. at 23).

Mr. Kennedy, Defendants White, Perry, and Paiz all have some political connections to Governor Susana Martinez and appear to have personal and professional connections to each other.  (*Id*. at 27-29).  The connections among these individuals create a conflict of interest, particularly in light of Mr. Kennedy's role in discovering Ms. Han and the fact that a full investigation into her death would involve him.  (*Id*.).

The New Mexico Attorney General investigated the circumstances of Ms. Han's death and the conduct of the APD.  (*Id*. at 29-30).  One of the findings of the investigation was that the death scene was mishandled by the APD.  (*Id*. at 30).  Also, the report recommended that the nature of Ms. Han's death should be changed to undetermined from suicide.  (*Id*.).

Plaintiffs filed this cause of action in state court, but Defendants removed the action to this Court on September 17, 2013.  (Doc. 1).  After Plaintiffs were granted leave to file their third amended complaint, Defendants moved to dismiss the civil rights claims on the basis of qualified immunity.  (*See generally* Doc. 58).

## II.   Standard of Review

### a.   12(b)(6)

The Federal Rules of Civil Procedure provide that a complaint must contain a "short and plain" statement of (1) the ground supporting the court's jurisdiction; (2) the claim showing that the plaintiff is entitled to relief; and (3) a demand for the relief sought.

FED. R. CIV. P. 8(a).   A defendant may move the court to dismiss a complaint for "failure to state a claim upon which relief can be granted."   FED. R. CIV. P. 12(b)(6).

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain allegations of fact that, taken as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged."   *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).   "The nature and specificity of the allegations required to state a plausible claim will vary based on context."   *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (citations omitted).   While the court must accept as true all of the allegations in the complaint, the court need not grant the same deference to conclusory statements. *Iqbal*, 556 U.S. at 678.   Moreover, "a formulaic recitation of the elements of a cause of action" will not suffice to state a claim.   *Twombly*, 550 U.S. at 555.   Dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.   *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).

### b.  *Qualified Immunity*

Qualified immunity protects public officials performing discretionary functions unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).   When a public official asserts the defense of qualified immunity, the court must determine whether the plaintiff has sufficiently alleged that the defendant's actions violated her constitutional or statutory rights and whether that right was clearly

established at the time of the alleged misconduct.  *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009).  A court may consider either prong of the qualified immunity analysis.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### III.   Analysis

#### a.  *§ 1983 Claims*

##### i.  *Law Related to § 1983*

A civil rights action under § 1983 may be brought against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State…, subjects, or causes to be subjected, any citizen of the United States. . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983 (1996).  To state a claim under § 1983, an injured person must allege a violation of a federally protected right, and must show that the alleged deprivation was committed by an individual acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).

##### ii.  *Official Capacity Claims*

Plaintiffs allege all of their claims against ten individual Defendants in their individual and official capacities.  A suit against an individual in his or her official capacity is "only another way of pleading an action an entity of which an officer is an agent."  *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690 n.55 (1978)).

Defendants argue that the claims against the Defendants who are public officers of the City of Albuquerque in their official capacities should be dismissed because Plaintiffs have also named the City of Albuquerque as a defendant.  (Doc. 58 at 7-8). The Court agrees.  Defendant City of Albuquerque, the government entity of which all

other Defendants are agents, has received notice and an opportunity to respond to the lawsuit.  *See Graham*, 473 U.S. at 166.  Therefore, all claims against Defendants in their official capacities are dismissed with prejudice.

       *iii.  Count I*

In their Complaint, Plaintiffs assert violations of substantive and procedural due process pursuant to § 1983 against all Defendants.[2]  (Doc. 53 at 32-33).  Specifically, Plaintiffs allege all Defendants prevented an investigation into Ms. Han's death, failed to collect and preserve evidence, and interfered with the work of subordinates.  (Doc. 64 at 20-21).  Plaintiffs also allege a conspiracy amongst Defendants to commit such violations.  (*Id.*).  Defendants argue that Plaintiff Han-Noggle does not have standing to assert such a claim.  (Doc. 58 at 9-11).  They also maintain that the claims for violations of Ms. Han's constitutional right to due process do not survive her death.  (*Id.* at 11-12).

Both the Fifth and Fourteenth Amendments ensure that an individual shall not be "deprived of life, liberty, or property" without due process of law.  U.S. CONST. amend. V, XIV § 1.  Procedural due process "ensures that a state will not deprive a person of life, liberty or property unless fair procedures are used in making that decision," while substantive due process "guarantees that the state will deprive a person of those rights for an arbitrary reason regardless of how fair the procedures are that are used in

---

[2] Plaintiffs identified Count I as "Violation of Substantive and Procedural Due Process Pursuant to 42 U.S.C. § 1983 Against All Defendants."  One of the supporting statements asserts that Plaintiffs have a due process right of "access to the courts."  (Doc. 53 at 32).  Defendants argue that Counts 1 and II are duplicative because Count II is for "Interference with Plaintiffs' Right of Access to the Courts Pursuant to 42 U.S.C. § 1983 Against All Defendants."  (Doc. 58 at 8-9).  Plaintiffs' respond that Counts I and II are not redundant because "Count I is a general claim for violation of substantive and procedural due process." (Doc. 64 at 20-21).  However, the Court notes that both Counts I and II mention access to courts.  The Response offers only a convoluted explanation for this duplication that does not truly address Defendants' argument.  Nevertheless, the Court considers each claim separately to be as thorough as possible.

making the decision." *Archuleta v. Colo. Dept. of Insts., Div. of Youth Servs.*, 936 F.2d 483, 490 (10th Cir. 1991).

A.  Plaintiff Han-Noggle's Claim

The Court construes this claim as being brought by Plaintiff Han-Noggle against all Defendants for violation of her constitutional due process right to an investigation into Ms. Han's death.  Defendants argue that Plaintiff Han-Noggle does not have standing to bring these claims "because they do not involve a personal injury to her or her property."[3]  (Doc. 58 at 11).

A plaintiff "does not have a federal due process right to a police investigation." *Maxey v. Banks*, No. 00-7137, 26 Fed. Appx 805, 808 (10th Cir. Nov. 21, 2001) (unpublished) (citing *DeShaney v. Winnebago County Dep't of Soc. Serv.*, 489 U.S. 189, 195-97 (1989)).  There is no fundamental right under the Constitution to know the cause of a family member's death.  *See Callihan v. Sudimack*, No. 96-3711, 117 F.3d 1420 (6th Cir. Jul. 10, 2997) (unpublished).   Courts have not recognized inadequate investigation "as sufficient to state a civil rights claim unless there was another recognized constitutional right involved."  *Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985) (citing *Smith v. Ross*, 482 F.2d 33 (6th Cir. 1973) (recognizing a civil rights violation for police failure to protect against housing discrimination)).

Plaintiff Han-Noggle has standing to assert violations of her own constitutional rights; however, in Count I, she has failed to identify a violation of her constitutional due process rights.  In the Response, Plaintiffs assert that Plaintiff Han-Noggle's cause of action is supplied by § 1983, but § 1983 does not create any substantive rights so a

---

[3] Defendants appear to construe Plaintiff Han-Noggle's claim under Count I in the Complaint as seeking redress for the violation of Ms. Han's constitutional rights.  (Doc. 58 at 10).  The Court finds that this is an incorrect characterization of the claim.

plaintiff must identify the constitutional right she seeks to vindicate pursuant to the statute.  *See* § 1983; *Boren By & Through Boren v. City of Colo. Springs*, 624 F. Supp. 474, 477 (D. Colo. 1985).

Plaintiff Han-Noggle has not shown that she has a due process right to an investigation into her mother's death, nor has she elaborated on any other due process right that she alleges was violated.  Therefore, she has failed to state a cognizable constitutional claim and this claim is dismissed with prejudice.  Any claims related to a conspiracy must also be dismissed with prejudice because Plaintiff Han-Noggle has failed to state a claim for "an actual deprivation of a right secured by the Constitution." *Dixon v. City of Lawton*, Okl., 898 F.2d 1442, 1449 (10th Cir. 1990) (internal quotation marks and citations omitted).

### B.  Plaintiff Wallbro's Claim

As the Court construes this particular claim, Plaintiff Wallbro alleges that Ms. Han's constitutional right to due process was violated when Defendants failed to conduct an investigation into her death.  The allegations that Defendants failed to preserve and collect evidence and interfered with the work of subordinates involved in the investigation support the overarching claim that Defendants failed to investigate Ms. Han's death, but do not present separate constitutional claims.

Under Tenth Circuit precedent, an individual's civil rights "cannot be violated once that person has died."  *Silkwood v. Kerr-McGee Corp.*, 637 F.2d 743, 749 (10th Cir. 1980) (citing *Guyton v. Phillips*, 606 F.2d 248, 250-51 (9th Cir. 1979)).  Plaintiff Wallbro has not alleged that Defendants were involved in Ms. Han's death, and any investigation (or lack thereof) into Ms. Han's death necessarily occurred after her death.

Moreover, as discussed above, there is no constitutional right to a police investigation. *See Maxey*, 26 Fed. Appx. at 808.  Plaintiff Wallbro has not alleged a violation of Ms. Han's constitutional rights preceding her death and therefore, this claim must be dismissed for failure to state a cognizable civil rights claim.  As with Plaintiff Han-Noggle's conspiracy claims, Plaintiff Wallbro's conspiracy claims must also be dismissed because she has not stated a constitutional violation.

### iv.  Count II

Plaintiffs claim that Defendants conspired to deprive them of their right to access the courts.  (Doc. 53 at 34-37).  In support of this claim, Plaintiffs argue that they have been deprived of the right to file a wrongful death action in state court as a result of Defendants' failure to properly investigate Ms. Han's death.[4]  (*Id*.).  Defendants maintain that Plaintiffs have failed to state a cognizable constitutional violation because they have not properly identified the underlying action in accordance with the Federal Rules of Civil Procedure.[5]  (Doc. 58 at 12-15).  Defendants also contend that Plaintiffs' access to courts claim fails to meet the second prong of the qualified immunity test because the right was not clearly established in the Tenth Circuit in 2010.  (*Id*. at 14).

---

[4] Plaintiffs identify the wrongful death action as the only potential cause of action that they have been denied the opportunity to bring.

[5] Defendants do not challenge Plaintiff Wallbro's standing to bring a denial-of-access claim in this case. Because Plaintiff Wallbro would be permitted to bring a wrongful death action as personal representative for the Estate of Mary Y.C. Han pursuant to N.M. STAT. § 41-2-3, the Court also assumes, but does not explicitly decide, that she would be permitted to bring a cause of action for the denial of her access to the court to file that suit.  In support of this assumption, the Court notes that an individual acting as a personal representative under the Wrongful Death Act is acting as the "nominal party for all statutory beneficiaries in order to centralize the claims and prevent multiple and possibly contradictory lawsuits." *In re Estate of Sumler*, 62 P.3d 776, 779 (N.M. 2003).  Cases recognizing denial-of-access claims acknowledge that the survivors are the individuals affected by a cover-up or other official action preventing the filing of the underlying cause of action, *see Bell v. City of Milwaukee*, 746 F.2d 1205, 1246 (7th Cir. 1984), and the Court sees no reason why the individual acting in the interest of the decedent's survivors would not have standing to raise this sort of a claim.

Courts have generally recognized some basis for claims that individuals have been deprived of their constitutional right to access the courts. *See Christopher v. Harbury*, 536 U.S. 403, 412-14 (2002) (identifying various cases in which courts have found valid denial-of-access claims).  In reviewing the cases, the Supreme Court explained that there are two categories of denial-of-access claims, those that are forward-looking and those that are backward-looking. *Id.*  In a backward-looking denial-of-access case, the plaintiff has been precluded from ever bringing a cause of action while in a forward-looking claim, the plaintiff is being prevented from bringing the claim by official action, but removal of the barrier would allow for the claim to be brought. *Id.*

In either kind of claim, the plaintiffs bringing denial-of-access claims are pursuing "some effective vindication for a separate and distinct right to seek judicial relief for some wrong." *Id.* at 414-15.  The Court noted that the basis of the constitutional right of access to courts was unsettled, but that all of the cases rested "on the recognition that the right [of access to the courts] is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Id.* at 415.

For that reason, the Court held that the underlying cause of action was an element "that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Id.*  Both the underlying cause of action, and the lost remedy, "must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.  Additionally, the underlying claim must be described so that a court may determine that it is not frivolous and is grounded in something "more than hope." *See id.* at 416.

In this case, Plaintiffs allege that they have been prevented from bringing a wrongful death suit in state court.  (Doc. 53 at 34).  Therefore, the Court must determine whether the allegations in the Complaint provide sufficient notice of the grounds for a wrongful death suit to a potential defendant.

In New Mexico, a wrongful death suit may be brought when the death of a person was "caused by the wrongful act, neglect or default of another . . . and the act, or neglect, or default, is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof" from the person or corporation which would have been liable if the death had not occurred.  N.M. STAT. § 41-2-1.  The action must be brought by the personal representative of the deceased individual.  N.M. STAT. § 41-2-3.

In their Complaint, Plaintiffs make several allegations that support an inference that Defendants failed to properly investigate Ms. Han's death.  For example, Plaintiffs allege that evidence was not collected, interviews were not conducted, and none of the investigating officers closely scrutinized the condition of Ms. Han's car.  Defendants did not pursue any theory of Ms. Han's death other than suicide, and some of them went so far as to direct other officers to cease inquiries into other possibilities.  From these allegations, the Court could deduce that Defendants interfered with the investigation.

However, the Complaint must also articulate the basis for the underlying cause of action in addition to the denial-of-access claim.  Plaintiffs have not identified the defendant in a potential wrongful death lawsuit, or even identified a wrongful act that caused Ms. Han's death.   Though Plaintiffs identify some facts that could be inconsistent with a suicide (i.e., Ms. Han's future plans and the unusually high level of

carbon monoxide found in her system) and imply a possible robbery (i.e., the missing rings), simply pointing out some inconsistencies is not the same as providing a coherent, non-frivolous basis for a wrongful death lawsuit.

Plaintiffs argue that *Harbury* is distinguishable on the facts and assert that they have provided "fair notice and support for their claims." (Doc. 64 at 10). As to Plaintiffs' first point, *Harbury* did not involve a cover-up, but the analysis of a denial-of-access claim is still applicable to this case; the Court relies on it here for the legal analysis and not for a factual comparison. There is sufficient precedent for this as the Tenth Circuit relied on the elements set out in *Harbury* in its analysis of a denial-of-access claim brought by a rape victim against the officers investigating the incident. *See Jennings v. City of Stillwater*, 383 F.3d 1199 (10th Cir. 2004).

Though Plaintiffs' also maintain that they have provided fair notice and support for their claims, as discussed above, the Court disagrees. The Court is not unsympathetic to Plaintiffs' dilemma – they are unable to point to specific evidence that could show that a wrongful act caused Ms. Han's death because of Defendants' failure to properly investigate. Nonetheless, the Supreme Court made very clear that any denial-of-access claim must also be predicated on an underlying claim that is "more than hope." *Harbury*, 536 U.S. at 416. Here, Plaintiffs have provided mere speculation as to the basis for a wrongful death suit. Again, the Court acknowledges that Plaintiffs may never have the evidence with which to bring a wrongful death suit due to the actions of Defendants, but this in and of itself is not a constitutional violation.[6] For all of

---

[6] As addressed above, individuals have no constitutional right to a proper police investigation. *See Maxey*, 26 Fed. Appx. at 808.

these reasons, the Court must dismiss Plaintiff Wallbro's denial-of-access claim for failure to state a claim.

Defendants also challenge Plaintiff Han-Noggle's standing to bring the denial-of-access claim identified in the Complaint.  (Doc. 58 at 9-11).  Plaintiff Han-Noggle is not the proper party to bring a wrongful death suit; in New Mexico, this cause of action can only be brought by the personal representative.  N.M. STAT. § 41-2-3.  Thus, Plaintiff Han-Noggle cannot allege that she was denied access to the courts because she was prevented from filing a wrongful death suit.

New Mexico law does permit family members to bring loss of consortium claims alongside wrongful death suits.  *See Silva v. Lovelace Health Systems*, Inc., 2014 WL 1977230 (N.M. Ct. App. May 6, 2014); *Romero v. Byers*, 872 P.2d 840, 845 (N.M. 1994).  However, Plaintiffs have not alleged in their Complaint that Plaintiff Han-Noggle was prevented from bringing a loss of consortium claim.  Therefore, the Court must dismiss Plaintiff Han-Noggle's claim for

denial-of-access because she has not identified an underlying claim she was denied the opportunity to bring.

Because Plaintiffs have failed to allege with enough specificity a state court cause of action that they have been prevented from bringing, the Court does not reach Defendants' argument that a denial of access claim is not clearly established.

   *b.  § 1985 Claims*

Section 1985 prohibits conspiracies to interfere with civil rights.  42 U.S.C. § 1985.  Plaintiffs allege that Defendants have violated this statute, and the Court addresses each of their claims below.  In light of the above analysis of Plaintiff's § 1983

claims, the Court considers Plaintiffs' § 1985 claims to be related to their right to access the courts.

> ### i. Count III

Plaintiffs assert that Defendants' intentional actions hindered, obstructed, and defeated the due course of justice with the intent to deny Plaintiffs equal protection under the law in violation of 42 U.S.C. § 1985(2).  (Doc. 53 at 37).

A violation of § 1985(2) occurs "if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws."  42 U.S.C. § 1985(2).  The conspiracy must be motivated by an intent to deny equal protection.  *See Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971).

In their Complaint, Plaintiffs have articulated only the elements of this claim.  A complaint that contains only the elements of a claim is insufficient to overcome a motion to dismiss.  *See Twombly*, 550 U.S. at 555 (finding that "a formulaic recitation of the elements of a cause of action" will not suffice to state a claim).  As Defendants point out, Plaintiffs have not alleged a conspiracy to obstruct justice in a state court nor have they made any allegations that explain how Plaintiffs were treated differently.  (Doc. 58 at 17).

In their Response, Plaintiffs quote various cases that discuss § 1985(2) and the required elements, but fail to identify the specific factual allegations that support their claim that the course of justice was obstructed in state court or that support an inference that Defendants' actions involved an "invidiously discriminatory animus" toward either Plaintiff.  *Taylor v. Gilmartin*, 686 F.2d 1346, 1357 (10th Cir. 1982).  The Complaint

contains over thirty pages of factual allegations, and Plaintiffs' inability – or refusal – to use their Response as an opportunity point to specific allegations in their Response to support the conclusory allegations laid out in Count III means that neither Defendants nor the Court has sufficient notice as to the claims.  FED. R. CIV. P. 8; *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (finding that allegations must be sufficient to make clear the grounds on which the plaintiff is entitled to relief, particularly in cases involving qualified immunity).

Therefore, Plaintiffs' claim that Defendants violated § 1985(2) is dismissed.

### ii.  Count IV

In their Complaint, Plaintiffs allege that Defendants acted to prevent Plaintiffs, the Office of the Medical Investigator, or any other agency from fully investigating Ms. Han's death in violation of 42 U.S.C. § 1985(1).  (Doc. 53 at 38).  Defendants contend that this claim must be dismissed because Plaintiffs have not alleged that a federal official was prevented from performing his or her duty, as required by the statute.  (*Id.* 19-20).

A violation of § 1985(1) occurs when two or more individuals conspire to prevent any officers of the United States from discharging their duties.  *Gallegos v. Jicarilla Apache Nation*, 97 Fed. Appx 806, 811 (10th Cir. 2003) (unpublished) (citing 42 U.S.C. § 1985(1)).  The statute applies only when federal officers are prevented from discharging their duty.  *Id.* (citing *Kush v. Rutledge*, 460 U.S. 719, 724 (1983).

As Defendants point out, Plaintiffs have not identified a federal agency or officer that was prevented from discharging any duties.  In their Response, Plaintiffs argue that the Office of the Medical Investigator was prevented from conducting an investigation into Ms. Han's death.  (Doc. 64 at 22).  Plaintiffs also point out that Defendants have

violated the orders of a state court.  (*Id.*).  Neither of these entities is a federal officer or agency and Plaintiffs have failed to articulate sufficient allegations to state a violation of § 1985(1).  Therefore, this claim is dismissed.

          *iii.  Count V*

In Count V, Plaintiffs bring a claim against Defendant Schultz for supervisory liability under 42 U.S.C. § 1985(3).  Plaintiffs allege that Defendant Schultz conspired with those he was supervising to prevent an independent agency from investigating Ms. Han's death.  (Doc. 53 at 39-40).  Defendant Schultz is alleged to have known that the APD should not have been at the scene of Ms. Han's death, or investigating the death, because Ms. Han represented clients in litigation against the department.  The Court construes Plaintiffs' claim as alleging a conspiracy amongst Defendants, including Defendant Schultz, to deprive Plaintiffs of their due process rights to the courts.  Any assertion of a claim that Defendants conspired to deprive Plaintiffs of their federal due process right to an investigation into Ms. Han's death fails to state a cognizable civil rights claim for the reasons addressed above.

A conspiracy to deprive any person or class of persons of the equal protection of the law, or for the purpose of preventing state authorities from providing persons within the state the equal protection of the law is a violation of § 1985(3).  *See* 42 U.S.C. § 1985(3).  To support a § 1985(3) claim, the plaintiffs must be members of a statutorily protected class and defendants' actions must stem from plaintiffs' membership in the class.  *Silkwood*, 637 F.2d at 746.  The Supreme Court has required that plaintiffs state that Defendants' actions have "some racial, or perhaps otherwise class-based invidiously discriminatory animus."  *Id.* at 748 (citing *Griffin*, 403 U.S. at 102-03).

In the Complaint, Plaintiffs have not alleged a racial or gender based basis for Defendants' actions.  It appears that they rest their claim that Defendants' actions were intended to deny equal protection of the law on Defendants' alleged animus towards Ms. Han because of her litigation against the APD.  (*See* Doc. 53 at 39 stating that "Chief Schultz knew of Ms. Han's multiple litigation [sic] against APD" and Defendant Schultz "knew or should have known that the allegations of 'accidental suicide' should have been investigated by an agency without the history with Ms. Han").  This dislike of Ms. Han based on her actions is insufficient to state a "class-based" discriminatory animus.  *See Silkwood*, 637 F.2d at 748 (finding that defendants' alleged hatred towards plaintiff arose from plaintiff's activities and not a general prejudice towards a class).

Here, Plaintiffs are essentially claiming that their right to access the courts has been denied by Defendants.  Thus, they might be characterized as belonging to a class of individuals who wish to petition the government.  However, this "class" has not been recognized as a suspect group protected by § 1985(3).  *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529 at 1538 (9th Cir. 1992).  To the extent that animus towards Ms. Han might be imputed to Plaintiffs, the Court finds that Plaintiffs have failed to identify a protected class to which Ms. Han belonged.  Though Ms. Han's relationship to the APD might be analogized to that a whistleblower to her employer.  Several courts have determined that a whistleblower does not fall within the statutory protection of § 1985(3).  *See Childree v. UAP/GA CHEM, Inc.*, 92 F.3d 1140, 1147 (11th Cir. 1996); *Deretich v. Office of Admin. Hearings, State of Minn.*, 798 F.2d 1147, 1153 (8th Cir. 1986); *Hicks v. Resolution Trust Corp.*, 970 F.2d 378, 382 (7th Cir. 1992).

Ultimately, Plaintiffs have failed to allege that they or Ms. Han are part of a class protected by the statute, nor have they tied the alleged "invidiously discriminatory animus" towards their membership in a particular class.  The Courts notes that this analysis may also apply to the dismissal of Count III, as Plaintiffs failed to make a similar showing as it relates to that claim.  Both Counts III and V are dismissed for failure to state a claim.

> c. *Tort Claims*

Plaintiffs bring a claim against Defendants alleging violations of the New Mexico Tort Claims Act.  (Doc. 53 at 40-41).  Defendants have moved to dismiss that claim. (Doc. 59).  Though the claim was properly before the Court at the time of removal, the Court has dismissed all federal claims in the Complaint and declines to exercise jurisdiction over this pendant state law claim.  *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("It has consistently been recognized that pendant jurisdiction is a doctrine of discretion, not of plaintiff's right").

Under these circumstances, where all federal claims initially brought have been dismissed, the Court should consider whether it is more appropriate to remand or dismiss without prejudice the pendant state law claim.  *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988).

The Court notes that while it is permissible to dismiss the state claims without prejudice in this case, Plaintiffs may be faced with statute of limitations problems should they chose to re-file their complaint.  Additionally, state court was Plaintiffs' chosen forum and this case was pending there for a year before Defendants removed it to federal court following amendment of the complaint to add the civil rights claims.  (*See*

Doc. 1; Doc. 7).  The Court finds that it is in the interests of judicial "economy, convenience, fairness, and comity," *see Cohill,* 484 U.S. at 351, to remand Plaintiffs' state law claims.  Therefore, *Defendants' Motion to Dismiss II: Motion to Dismiss Count VI of Verified Third Amended Complaint on the Grounds of Immunity,* (Doc. 59), is denied as moot.

## IV.   Conclusion

For the reasons discussed above, the Court **FINDS** that:

a. *Defendants' Amended Motion to Dismiss I: Motion to Dismiss Civil Rights Claims Against Individual Defendants in Verified Third Amended Complaint (Counts I to V) on the Basis of Qualified Immunity* is **GRANTED**;

b. All claims against Defendants White, Perry, Schultz, Feist, Paiz, Banks, Adams, Muniz, Hoffman, and Wilham in their official capacities are **DISMISSED WITH PREJUDICE**;

c. Count I of Plaintiffs' *Verified Third Amended Complaint for Violations of Civil Rights and Supplemental Claims Under State Law* is **DISMISSED WITH PREJUDICE**;

d. Counts II, III, IV, and V of Plaintiffs' *Verified Third Amended Complaint for Violations of Civil Rights and Supplemental Claims Under State Law* are **DISMISSED WITHOUT PREJUDICE**;

e. Count VI of Plaintiffs' *Verified Third Amended Complaint for Violations of Civil Rights and Supplemental Claims Under State Law* is **REMANDED**; *and*

f.  *Defendants' Motion to Dismiss II: Motion to Dismiss Count VI of Verified*

   *Third Amended Complaint on the Grounds of Immunity*, (Doc. 59), is

   **DENIED AS MOOT**.



   _____

   THE HONORABLE CARMEN E. GARZA
   UNITED STATES MAGISTRATE JUDGE